ARIS ISOTONER GLOVES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–06–00866

MEMORANDUM AND ORDER

(Dated November 7, 1988)

*Donohue and Donohue* (*James A. Geraghty* and *Joseph F. Donohue*) for the plaintiff.

*John R. Bolton*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice (*Saul Davis*) for the defendant.

AQUILINO, *Judge:* This action challenges the value of imported dress gloves computed pursuant to section 201 of the Trade Agreements Act of 1979, 19 U.S.C. § 1401a.

The underlying facts are not in dispute. They indicate that the plaintiff New York importer furnished free of charge its wholly-owned affiliate in the Republic of the Philippines with equipment, machinery, tools, dies, and spare parts which were then used in the production of the merchandise. The total cost or value of the equipment and machinery is said to be $421,207.81, with the value of the tools, dies, and spare parts set at $89,497.42. The equipment and machinery were capitalized and carried on plaintiff's books based on an estimated useful life of eight years and depreciated on a straight line basis. The other items were expensed in one fiscal year.

For "mutual convenience", the contested duties were computed in the following manner, as described by plaintiff's controller in his affidavit:

> 5. Because it has been the position of Customs Headquarters that the involved machinery and equipment were dutiable assists, Aris Isotoner Gloves, Inc. tendered duty to cover the value of the machinery and equipment as well as the dies, tools and spare parts utilized by Aris (Philippines), Inc. during 1981 by allocating the value thereof to a single representative Customs entry as follows. The total FOB value of Aris merchandise imported from the Philippines during fiscal year 1981 was divided into the total duty deposited which was based on the various applicable rates of duty depending on the involved tariff classification and relative volume by value of each product category. The result was the average duty rate of 21.07%. Therefore, the duty attributable to the involved "assists" was $107,605.54 ($510,705 × 2107 [sic]). To facilitate payment, the value of the assists was added to JFK Airport entry number 82–343317–1 of November 20, 1981. Since none of the merchandise enumerated on that entry was dutiable at exactly 21.07%, the declared value of the assists was adjusted to correpond [sic] to the rate applicable to a portion of the merchandise covered by the entry, to wit: Embroidered nylon gloves classifiable under item 704.32 TSUS at 30%. Therefore, the declared value of the assists was $358,685.20, at 30% which equals $107,605.56. The entry was annotated to show that assists were "added to meet market value", and explanatory correspondence accompanied the entry.

After payment of those duties, the importer filed a protest. It was denied, whereupon this action was commenced, seeking judicial interpretation of section 201(a) of the Trade Agreements Act. In particular, subsection (e) states, in part:

> (1) The computed value of imported merchandise is the sum of—
>
>> (A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;

(B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;

(C) any assist, if its value is not included under subparagraph (A) or (B); and

(D) the packing costs.

19 U.S.C. § 1401a(e)(1). Subsection (h), 19 U.S.C. § 1401a(h) (1) (A), defines the term "assist" to mean

any of the following if supplied directly or indirectly, and free of charge or at reduced cost, by the buyer of imported merchandise for use in connection with the production or the sale for export to the United States of the merchandise:

(i) Materials, components, parts, and similar items incorporated in the imported merchandise.

(ii) Tools, dies, molds, and similar items used in the production of the imported merchandise.

(iii) Merchandise consumed in the production of the imported merchandise.

(iv) Engineering, development, artwork, design work, and plans and sketches that are undertaken elsewhere than in the United States and are necessary for the production of the imported merchandise.

## DISCUSSION

In *Texas Apparel Co.* v. *United States,* 12 CIT 1002, Slip Op. 88–148 (Oct. 25, 1988), the plaintiff challenged the Customs Service's inclusion of the cost or value of sewing machines, repair parts and of repairs in computing the value of certain wearing apparel imported from Mexico. That is, the plaintiff contended that the sewing machines were "general purpose equipment" and not "tools, dies, molds, and similar items used in the production of the imported merchandise" within the meaning of the foregoing statute.

In holding for the defendant, the court stated that the legislative history of the Trade Agreements Act "reveals that Congress did not intend as narrow or restrictive a view of computed value, or of the term 'assist,' as suggested by plaintiff";[1] that the Customs Service's interpretation of the term "as including items directly related to the production of merchandise, such as a sewing machine to the sewing of wearing apparel, cannot be said to be contrary to the goals and intent of the new valuation code";[2] and that, since the sewing machines at issue "are used directly 'in the production of the imported merchandise' * * *, Customs' interpretation * * * is reasonable and consistent with congressional intent." Slip Op.

---

[1] Slip Op. 88–148, at 8.

[2] *Id.* at 10.

88–148, at 12. Rejecting the plaintiff's *ejusdem generis* argument, the court found that

> the function performed by the sewing machines, which is to construct the apparel by sewing together the fabric, is essentially or principally the same as that of a tool, die, or mold. Although a tool may be defined as * * * a manual instrument, a tool may also be defined more broadly as "an implement or object used in performing an operation or carrying on work of any kind * * *" *See Websters Third New International Dictionary* 2408 (1981). It is clear, therefore, that in this industry a sewing machine is a device similar to a "tool, die, [or] mold * * * used in the production of the imported merchandise." *Id.* at 14.

## I

The issue of law controlling this later-filed action at bar and the competing arguments thereon are the same. While the decision in *Texas Apparel* is apparently one of first impression, it is persuasive, and *stare decisis* counsels adherence to it. Thus, this court concludes that the defendant is entitled to judgment on the issue herein. That is, Customs acted within its lawful authority in collecting duties based on the $89,497.42 worth of tools, dies and spare parts, as to which there is no dispute,[3] as well as based on the value of the equipment and machinery.

## II

As indicated, sewing machines, including their repair parts and the cost of repairs, were held to be "assists" in *Texas Apparel.* In this action, plaintiff's motion for summary judgment contains an extensive list of equipment and machinery, which is categorized as knitting machines, sewing machines, presses (without dies or drills), knives and cutters, other machines, and major machine components, which together are valued at the above-mentioned sum of $421,207.81.

Both plaintiff's motion and defendant's cross-motion were submitted prior to the decision in *Texas Apparel* in the expectation that this action could be resolved by summary judgment. While such resolution was feasible in that action, and is, in essence, possible here, the opinion in *Texas Apparel* points out that

> Customs' interpretation clearly distinguishes between machinery which works directly on the merchandise or contributes directly to its manufacture, e.g., sewing machines, drill presses and ovens, and machinery which although used by the industry is not used directly in the production of the merchandise itself, e.g., air-conditioners and emergency generators.[4]

---

[3]*Compare, e.g.,* complaint para. 16 *with id.,* paras. 6–9. *See also* plaintiff's Exhibit 1 (glove die used in presses for cutting material).

[4]Slip Op. 88–148, at 11. *Cf. id.* at 13.

In other words, while the statutory requirement of "use in connection with the production or the sale for export to the United States of the merchandise" is broad enough to encompass equipment and machinery of the kind listed herein, some of the pieces listed may, nevertheless, not be assists, as now defined. For example, Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment notes (at page 11, n. 16):

> It appears from Schedule A * * * that there were two drill presses used to make shop tools * * *.
> If these articles were, in fact, only utilized to make other tools, and were not *themselves* used in the production of the imported merchandise, the Government may concede (after the proof of use is presented, and after consultation with our client) that these two machine tools may not be considered assists for purposes of section 1401a(h)(1)(A)(ii). [emphasis in original]

Simply stated, were the plaintiff entitled to summary judgment on the law, no issue of fact would require resolution. Since this is not the case, and since the interpretation of that law now raises certain issues of fact herein, the court, after due deliberation, concludes that it is in the interest of a just, speedy and inexpensive resolution of this matter to direct the parties to confer to determine if they are able to resolve themselves those issues in the light of *Texas Apparel* and before any further, formal proceedings.

The parties are to report the results of their consultation(s) to the court within 45 days hereof.